**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Arthur SMITH, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harry CHRABASZEWSKI, Defendant-Appellant.**

**Nos. 73–1648 and 73–1649.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1973.

Decided July 16, 1974.

294

George E. Woods, Detroit, Mich., on briefs, for Arthur Smith.

Stephen M. Landau, Southfield, Mich. (Court-appointed), on briefs, for Harry Chrabaszewski.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., John J. Robinson, Lauren S. Kahn, Attys., David J. Cook, John L. Newcomer, Sp. Attys., Dept. of Justice, Detroit, Mich., on brief, for plaintiff-appellee.

Before WEICK, CELEBREZZE and McCREE, Circuit Judges.

McCREE, Circuit Judge.

Appellants were convicted in a jury trial of operating an illegal gambling business[1] and of conspiring to commit that offense.[2] These direct appeals require us to decide whether the prosecutor's statement in closing argument that the jury should "require" the defendants to present a "reasonable explanation" of the meaning of taped wiretap evidence, other than the criminal meaning he ascribed to the conversations, was improper, and, if so, whether the trial judge's subsequent cautionary instruction to the jury rendered the error harmless. There is also the question whether the government violated the wiretap statute. Exercising our supervisory power over federal criminal procedures, we hold that the prosecutor's comments were improper because · they had the effect of shifting the burden of proof from the government to the defendants and abrogating the presumption of innocence to which appellants were entitled. They also focused the jury's attention on appellants' failure to testify and penalized, by implication, appellants' exercise of their constitutional privilege against self-incrimination. We do not view the error as harmless, and reverse the convictions and remand for a new trial.

■ At appellants' trial, the government introduced as its principal proof of the indictment several taped intercepted telephone conversations of appellants, who chose not to take the witness stand in their own defense. In his closing argument, the prosecutor went beyond arguing that the jury should infer appellants' guilt from the evidence presented, and asked the jury to require appellants to explain the meaning of the telephone calls. The prosecutor argued:

> When you deliberate in the case, I would ask you to ask yourself and to ask your fellow jurors to answer the question of why were these defendants engaged in these conversations that you heard on the tapes and you have read in the verbatims. If they were

1. 18 U.S.C. § 1955.

2. 18 U.S.C. §§ 2, 371.

not engaged in the relationships that I have described for you, if there is any other reasonable explanation of the meaning of these calls other than what I have suggested the meaning, because if there is, in each and every instance—certainly the ones I have referred to in the opening argument, I would ask that the defendants satisfy you that there is no other reasonable explanation.

If they have some reasonable alternatives to suggest as to what the calls mean, then I leave with you now, you then require them to show that to you.

Appellants did not interrupt the argument to object to these comments but upon its conclusion moved for a mistrial on the grounds that the remarks were improper and prejudicial. The court denied the motion, but gave the following cautionary instruction to the jury:

Ladies and gentlemen of the jury, during his closing argument, the Assistant United States Attorney here said that if there were other reasonable explanations of the meaning of these calls other than the explanation which he suggested, that he would ask the defendants to satisfy you that there is no other reasonable explanation and he also stated that if they, meaning the defendants' counsel, have some reasonable alternative to suggest as to what the calls mean, that you require them to show that to you.

Now, those remarks by the Assistant United States Attorney were improper and they should be disregarded. May I remind you, ladies and gentlemen, of my earlier statement and I will instruct you on it further at the end of the case, that the defendants in this are required to show nothing in order to maintain their innocence.

The government has the burden to prove the defendants guilty beyond a reasonable doubt and neither the defendants nor their attorneys are required to explain to you why they believe they are innocent or give you any explanation of what the taped phone calls mean. The defendants have no duty to prove what the calls mean; they are not required to show anything. The government has the burden of proof and this burden of proof never shifts to the defendants in a criminal case.

Appellants contend the prosecutor's argument was reversible error and the resulting prejudice was not cured by the court's subsequent cautionary instruction.

■ The challenged comments of the prosecutor were clearly improper argument. It is, of course, the duty of the prosecutor to advance the government's cause with force and with persuasiveness. However, this duty includes concerns in addition to mere advocacy. To the prosecutor is also entrusted the responsibility of observing in practice the principles considered under our system to be essential to a fair and just criminal procedure. To be sure, this responsibility is shared with the judiciary, with the bar, and with others. But the duty not to derogate from a fair and impartial criminal procedure rests, in the first instance, upon the shoulders of the prosecutor, the representative of our government who presents its proofs in support of its indictments. As Mr. Justice Sutherland observed in Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935):

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from

improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Here, the prosecutor's argument to the jury violated the spirit, at least, of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). In that case the Supreme Court held that a prosecutor's similar comment to a jury, with the acquiescence of the court, in a state criminal trial violated the defendant's Fifth Amendment privilege against self-incrimination. Although the element of acquiescence by the court is missing here, nevertheless, we conclude that the prosecutor's statement alone prejudiced appellants' right to a fair trial. Because this case is before us on direct appeal, we base our decision on our supervisory powers over criminal trials within this circuit and therefore find it unnecessary to decide whether the improper comments also constituted a constitutional violation. *Cf.* Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

The question remains whether the error was rendered harmless by the court's subsequent cautionary instruction to the jury.

We first consider appellants' contention that the prejudice to appellants caused by the prosecutor's improper argument could only have been overcome if the district court had "immediately interrupted" the government's argument to give, *sua sponte*, a "strong cautionary instruction." Appellants rely on United States v. Flannery, 451 F.2d 880 (1st Cir. 1971). There, the court held unconstitutional a prosecutor's comment to the jury in summation that some of the government's evidence was "uncontradicted", where only the defendant could have been called to contradict the evidence, because the comment called attention to defendant's failure to testify. Because of the court's concern with "persistent" violations of the rule proscribing prosecutorial comment about a defendant's election not to testify, Des-

mond v. United States, 345 F.2d 255 (1st Cir. 1965), the court in *Flannery, supra,* 451 F.2d at 882, announced a "prospective rule" designed to deter these violations:

> Hereafter, as to cases tried after the date of this opinion, when it is apparent on the record that there was no one other than himself whom the defendant could have called to contradict the testimony, we shall not endeavor to weigh prejudice, but shall rule it prejudicial as matter of law, with a single exception. If the court interrupts the argument, instructs the jury fully on the defendant's constitutional right not to testify and the jury's obligation not to draw unfavorable inferences and, in addition, states to the jury that the U. S. Attorney was guilty of misconduct, we may find no prejudice; otherwise we will reverse.

We are convinced that the prosecutor's argument here that the jury should require the defendants to present an alternative explanation of the telephone conversations, where defendants had, in the exercise of their privilege against self-incrimination, declined to testify, was at least as improper and prejudicial to defendants as the comments on "uncontradicted" evidence proscribed in *Desmond* and in *Flannery*. We decline, however, to adopt a rigid rule requiring the trial judge in all cases to interrupt the argument without objection or request from defendants. There may be cases where the prejudice from an improper argument by the prosecutor will be better neutralized by a cautionary instruction given at the close of the government's argument instead of during an interruption that might more dramatically impress on the jury its prejudicial effect. Appellants' counsel here assert that they did not object immediately for this very reason.

We adhere to the rule stated by Judge Simon for this circuit in Pierce v. United States, 86 F.2d 949 (6th Cir. 1936), for testing prejudice where a cautionary instruction has been given a jury be-

cause of a prosecutor's improper argument:

> The inquiry . . . must always be whether in the view of the whole record the impression conveyed to the minds of the jurors by irrelevant and prejudicial matter is such that the court may fairly say that it has not been successfully eradicated by the rulings of the trial judge, his admonition to counsel, and his instruction to the jurors to disregard it.

*Pierce, supra* at 952. *See also* Ippolito v. United States, 108 F.2d 668 (6th Cir. 1940).

The inquiry is necessarily a speculative one, but we are not without guidance. The Supreme Court, in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1945), has set forth the standard to apply in determining whether harmless error has resulted from improper evidence or from improper argument to the jury:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. Bruno v. United States, *supra*, 308 U.S. at page 294, 60 S.Ct. at page 200. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos, supra* 328 U.S. at 764–765, 66 S.Ct. at 1248. (Footnote omitted). Our decision here is based on our supervisory powers and not on the Constitution, and we therefore need not apply the more rigorous standard of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), requiring reversal for constitutional error unless it is determined to be "harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. 824. Nevertheless, because the prosecutor's improper argument clearly touched upon rights protected by the Constitution, we must apply the principles stated by the Supreme Court in *Kotteakos* and by our circuit in *Pierce* to insure that appellants' rights to a fair trial were not prejudiced.

We consider first the prejudicial nature of the prosecutor's comments that we have here held to be improper. Although prejudice may be magnified by the cumulative effect of repeated improper conduct, *e. g.*, Volkmor v. United States, 13 F.2d 594 (6th Cir. 1926), we have recognized that even a "single misstep on the part of the prosecutor may be so destructive of the right of the defendant to a fair trial that reversal must follow." Pierce v. United States, *supra* 86 F.2d at 952. Pharr v. United States, 48 F.2d 767 (6th Cir. 1931). We consider the prosecutor's improper argument here to have such a prejudicial effect. This is not a case involving merely the prejudice that might be expected to result from the improper admission of "cumulative" evidence of appellant's guilt, *e. g.*, United States v. Haskins, 345 F.2d 111, 116 (6th Cir. 1945), but instead involves evidence of "the type which infuriates or inflames a jury." *Haskins, supra* at 116. Like a comment calling the jury's attention to a defendant's bad character, *e. g.*, Ippolito v. United States, 108 F.2d 668 (6th Cir. 1940), Volkmor v. United States, 13 F.2d 594 (6th Cir. 1926), the prosecutor's comments here tended to "overthrow the presumption of innocence." Pierce v. United States, *supra*, 86 F.2d at 953.

We consider next the curative effect of the cautionary instruction in the light of the pervasiveness of the prejudice. An error may be so prejudicial that no cautionary instruction can safely eradicate its effect. For example, in Pierce v.

United States, supra at 952–953, Judge Simons stated for the court:

> To those with any breadth of experience in the trial of criminal cases it must be clear that suggestions, especially when often repeated, that a defendant has earlier been in trouble with the law, that he has elsewhere or previously been indicted, that he has been frequently detained and investigated by law enforcement officers, and that he is a fugitive from justice, are so prejudicial that no admonition from the court that they be disregarded, however promptly and forcibly made, may be safely relied upon to free the minds of jurors from the impression that the defendant is of bad character and capable of committing the crime charged. They may completely overthrow the presumption of innocence. . . .

See also, United States v. Joseph Miller Calvert, 498 F.2d 409 (6th Cir. 1974), where this circuit recently held that the suggestion that defendant had a prior criminal record was prosecutorial overkill requiring reversal. Although improper argument here did not tarnish appellants' characters, nevertheless, it invited the jury to apply the common expectation that an innocent person will speak out if he is falsely accused,[3] and the court's cautionary charge did not go as far as it might have in attempting to neutralize this prejudice. Although the district court clearly charged the jury that the burden of proof was on the government and that appellants were not required to explain anything, the cautionary charge failed expressly to instruct the jury that no adverse inference could be drawn from appellants' silence concerning the meaning of the telephone calls. Such an instruction was necessary because the government's argument had called attention to appellants' failure to testify and to provide an innocent explanation of the telephone calls.

■■ Accordingly, we conclude that the cautionary instruction did not eradicate from the jurors' minds the prejudicial effect of the prosecutor's improper argument. And, although the government in its brief did not argue that the error was harmless because it believed that any error was cured by the cautionary instruction, we conclude from the record as a whole that the error was not harmless. The intercepted telephone conversations transcribed in the record on appeal, constitute essentially all the proof offered in support of the indictments. They contain cryptic and esoteric references to wagering on horse racing, basketball, and other sports events in language suggesting the existence of a bookmaking operation, but the jury would have had to draw inferences to establish all the statutory elements of a violation of the federal gambling laws. Although the requisite inferences might not have been difficult to draw, the task was for the jury and the burden of proof rested on the government. The prosecutor's improper argument to the jury was the attempt to abrogate the presumption of appellants' innocence and the jury was invited to draw inferences supporting guilt unless the appellants offered proofs of innocence. We are left with "grave doubt" that the error did not have "substantial influence" upon the jury's verdict, Kotteakos v. United States, supra 328 U.S. at 765, 66 S.Ct. 1239, and we therefore conclude that the prosecutor's error was not harmless. Accordingly, the convictions are reversed and the cases remanded for a new trial.

■ Since we remand for a new trial, we will consider briefly appellant Chra-

---

3. Compare the exception to the hearsay rule concerning admissions by silence:

> If a statement is made by another person in the presence of a party to the action, containing assertions of facts which, if untrue, the party would under all the circumstances naturally be expected to deny, his failure to speak is circumstantial evidence that he believes the statements to be true and his conduct is thus receivable against him as an admission of such belief. McCormick on Evidence § 247, p. 528 (1954).

baszewski's contention that there was such a fatal variance from the procedures established by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518, to require suppression of the evidence obtained from the intercepted telephone conversations. In light of the Supreme Court's decision in United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), even if the asserted variances occurred they would not require suppression.

Reversed and remanded for a new trial.

WEICK, Circuit Judge (concurring in part and dissenting in part).

I concur in the ruling of the majority with respect to the intercepted telephone conversations and that suppression was not required.

I further agree that two paragraphs of the argument to the jury of the Assistant United States Attorney contained language which had better been left unsaid. However, no objection was made to the argument at the time by the defendants. The defendants waited until the Assistant United States Attorney had finished his argument, and then they moved for a mistrial.

When it was called to the attention of the Court, the District Court clearly and forcefully instructed the jury that the remarks were improper and should be disregarded; that the defendants are required to show nothing in order to maintain their innocence; that the burden of proof is upon the Government to prove the defendants guilty beyond a reasonable doubt; that neither the defendants nor their attorneys are required to explain to the jury why they believe the defendants are innocent, or to explain what the taped telephone calls were. The District Court denied the motion for a mistrial.

In my opinion this cautionary instruction completely cured the alleged error. I do not regard the remarks of the Assistant United States Attorney as inflammatory in any respect. This was not the type of misconduct involved in Pierce v. United States, 86 F.2d 949 (6th Cir. 1936), relied upon by the majority, which conduct in that case was so bad that no cautionary instruction could possibly cure it.

The District Court was familiar with all of the aspects of the trial and was in a good position to assess whatever effect the arguments of counsel might have on the jury. In my opinion the District Court did not abuse its discretion in denying the motion for a mistrial.

The defendants were entitled to a fair trial, but not a perfect one; in my judgment they had a fair trial.

I would affirm the judgment of conviction.