ANN WALSH BRADLEY, J. (dissenting).
¶ 88 At the foundation of our system of justice lies the principle that defendants do not have to prove their innocence. State v. Sawyer, 266 Wis. 494, 506, 63 N.W.2d 749 (1954). In fact, a defendant is entitled to a presumption of innocence and need not present any evidence at all at trial. See *775 Johnson v. State, 85 Wis. 2d 22, 27, 270 N.W.2d 153 (1978) ; State v. Johnson, 11 Wis. 2d 130, 134, 104 N.W.2d 379 (1960).
¶ 89 As a corollary to this foundational principle, the State bears the burden to prove beyond a *668 reasonable doubt every fact necessary to constitute guilt. State v. Schulz, 102 Wis. 2d 423, 427, 307 N.W.2d 151 (1981) ; In re Winship, 397 U.S. 358, 361-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This burden remains with the State throughout the entirety of trial, and cannot be shifted to the defendant. Schulz, 102 Wis. 2d at 427, 307 N.W.2d 151.
¶ 90 Despite these well-established principles, the State in this case argued to the jury that the defendant has a burden to present evidence and convince the jury of the victims' motive to lie. Because the statements made during voir dire and closing argument misstated the law governing a jury's consideration of evidence and impermissibly shifted to the defendant a burden he does not carry, I respectfully dissent.
I
¶ 91 A jury convicted Bell of the sexual assault of two underage victims, T.P. and A.L. At trial, Bell's defense focused largely on the credibility of the victims. Both Bell and the State presented extensive argument on this subject.
¶ 92 The question is whether certain arguments made by the State, referred to by the majority as the "must believe" statements and the "motive" statements, crossed the line so as to impermissibly shift the burden of proof from the State to the defendant. Because it is dispositive, I focus my analysis on the "motive" statements only.
II
¶ 93 The "motive" statements framed the State's entire case. Setting the stage during voir dire, the prosecutor asked the jury panel, "Would everybody *669 agree here that ... if you're going to lie, you're going to have a reason like jealousy of some sort; there's going to be a reason why you would lie?"
¶ 94 Probing further, the prosecutor then posed the question to individual jurors, "Would you expect there would be some evidence that somebody would have a reason to lie? There would be some sort of evidence that this person would have a reason to lie[.]" Conflating the burden of proof jury instruction with the instruction on credibility of witnesses, the prosecutor began to instruct the jury panel on the law. He advised that the "jury instructions on reasonable doubt" do not allow the jury to speculate, and that the jury must instead "just look at the facts, the evidence or lack of evidence in this case" with regard to witness credibility.[1]
¶ 95 During closing argument, the State built on the theme introduced in voir dire, repeatedly contending that there was no evidence demonstrating that the victims had lied. Majority op., ¶¶ 34-35. It advanced that in the absence of such evidence the jury should believe the victims. See id., ¶35. Specifically, the State argued to the jury, "if somebody is going to make a flat out lie about something, they're going to have a reason. They're going to have some evidence of that reason." The State further asserted that Bell "has no idea why [the victim] would make this up. He *776 says that repeatedly and he ... just begins to speculate." *670 ¶ 96 The State suggested next that if no evidence was presented regarding the victims' motive to lie, then the jury would be left with only speculation as to their credibility. It contended that Bell "just begins to make guesses after he says he has no idea why she would make this up." In concluding this segment of its closing argument, the State reiterated, "If a person lies about something, they must have a reason. And the reason why there is no evidence in this case about why anybody would lie is because they're not lying."
¶ 97 Following Bell's closing argument, the State returned for rebuttal. It doubled down on its previous arguments, asserting "[t]here's never testimony they were lying because [they have a bad life]. There's no testimony they were lying for any other reason. There's no testimony that they were lying. There's no evidence that they were lying.... And we're supposed to look at the evidence or lack of evidence." The State then admonished the jury that it is forbidden from speculating as to why the victims would lie.
¶ 98 According to the State, who has to come up with this important evidence of motive? The State? Certainly not. Rather, according to the State's distortion of the burden of proof instruction, it is the defendant who must introduce this evidence. Yet, a theory of defense that the witnesses are lying should not be transformed into a shift of the burden of proof, requiring that the defendant offer evidence of motive to lie.
¶ 99 The majority, however, does not see a problem with the prosecutor's statements, contending that "it is a matter of general life experience that people normally do not lie without reason: It is common sense that people do not lie unless there is a reason behind the lie. That is, at least ordinarily, and arguably by definition, a lie is the result of a decision to *671 convey a falsehood." Majority op., ¶ 55 (quoting State v. Bell, Nos. 2015AP2667-CR & 2015AP2668-CR, unpublished slip op., ¶ 32, 2016 WL 7742999 (Wis. Ct. App. Dec. 1, 2016) ). In the majority's view, the State's arguments "fell into the category of persuasion" because they "consist of observations about this common-sense principle and an encouragement not to discard it as [jurors] weighed the victims' credibility." Id.
¶ 100 However, what becomes apparent upon reading the transcript in this case is that the State essentially misinformed the jury that it could not find the victims lacking in credibility unless Bell presented "evidence" of their motive to lie. Such an assertion is legally incorrect. Pursuant to well-established precepts, Bell need not do anything of the sort. See Sawyer, 266 Wis. at 506, 63 N.W.2d 749.
¶ 101 Even accepting the majority's dubious premise that there is always a reason behind an untruthful statement, such a premise does not require that a defendant present evidence of a witness's motive to lie. Indeed, as observed above, the defendant has no burden to present any evidence whatsoever, let alone evidence proving a motive. See Johnson v. State, 85 Wis. 2d at 27, 270 N.W.2d 153.
¶ 102 Here the State's remarks are akin to those at issue in U.S. v. Smith, 500 F.2d 293 (6th Cir. 1974). In Smith, the prosecutor made the statement in closing argument "that the jury should 'require' the defendants to present a 'reasonable explanation' of the meaning of taped wiretap evidence, other than the criminal meaning he ascribed to the conversations[.]" Id. at 294. In other words, the prosecutor implored the jury to require the defendant to *777 present evidence, shifting the burden of proof. See id. *672 ¶ 103 The Smith court determined that "[t]he challenged comments of the prosecutor were clearly improper argument." Id. at 295. The remarks "had the effect of shifting the burden of proof from the government to the defendants and abrogating the presumption of innocence to which [the defendants] were entitled." Id. at 294.
¶ 104 In reaching this result, the Smith court forewarned that "[i]t is, of course the duty of the prosecutor to advance the government's cause with force and persuasiveness. However, this duty includes concerns in addition to mere advocacy." Id. at 295. Specifically, the prosecutor is entrusted with "the responsibility of observing in practice the principles considered under our system to be essential to a fair and just criminal procedure[,]" thereby protecting the constitutional right to due process. Id.
¶ 105 Smith is not alone in distinguishing between lawful advocacy and an unlawful shift of the burden of proof. Courts around the country have determined that a shift of the burden of proof to the defendant constitutes a denial of the required "fair and just criminal procedure." See, e.g., People v. Santana, 255 P.3d 1126, 1130 (Colo. 2011) (explaining that it is impermissible for a prosecutor to "shift the burden of proof through argument or comment"); People v. Fyda, 288 Mich.App. 446, 793 N.W.2d 712, 723 (2010) ("A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof."); State v. Roman Nose, 667 N.W.2d 386, 399 (Minn. 2003) ("[A] prosecutor may not comment on a defendant's failure to call witnesses or to contradict testimony because *673 such comments might lead the jury to believe that the defendant has a duty to call witnesses or bears some burden of proof.").
¶ 106 I agree with the majority that, "while [a prosecutor] may strike hard blows, he is not at liberty to strike foul ones." Majority op., ¶ 16 (citing Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) ). However, the majority errs in its application of this principle.
¶ 107 Like the blows landed by the prosecutor in Smith, the jabs the State takes in this case are foul. They constitute a "clearly improper argument" that "shift[s] the burden of proof from the government to the defendants and abrogate[s] the presumption of innocence" to which Bell is entitled. See Smith, 500 F.2d at 294-95. In short, Bell has no burden of proof, yet the State's comments placed one on him.
¶ 108 The error here is not a mere evidentiary error. Rather, it constitutes a violation of the due process right to a fair trial by distorting the burden of proof jury instruction, thus shifting the burden of proof to the defendant.
¶ 109 When a defendant alleges that a prosecutor's statements constituted plain error, as does Bell, the burden is on the State to prove that the error is harmless beyond a reasonable doubt. State v. Mayo, 2007 WI 78, ¶ 29, 301 Wis. 2d 642, 734 N.W.2d 115. Because I determine that on this record the State has failed to make such a showing, I respectfully dissent.

The Honorable Michael Rosborough presided.