In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-2819

GERROD R. BELL,

*Petitioner-Appellant,*

*v.*

RANDALL HEPP,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:18-cv-01439 — **J. P. Stadtmueller**, *Judge.*

ARGUED APRIL 25, 2023 — DECIDED JUNE 7, 2023

Before RIPPLE, ST. EVE, and PRYOR, *Circuit Judges.*

RIPPLE, *Circuit Judge.* At Gerrod Bell's trial for sexual assault, a Wisconsin prosecutor argued that an acquittal would require jurors to believe that the witnesses were lying and stressed that there was no evidence of a motive to lie. After Mr. Bell was convicted, he moved for a new trial, claiming that the prosecutor's argument made his trial unfair by implying that the defense had the burden to prove innocence and that jurors with a reasonable doubt about the witnesses'

accounts could still convict if they "believed" the witnesses were more credible than not. The Supreme Court of Wisconsin rejected Mr. Bell's claim; it held that the comments were not improper. The district court denied his petition for a writ of habeas corpus.

We affirm the judgment of the district court. If our review were de novo, the prosecutor's comments might give us significant pause. But in this habeas corpus case, the Antiterrorism and Effective Death Penalty Act ("AEDPA") limits our review. Under AEDPA's deferential standard, we must conclude that the Supreme Court of Wisconsin's decision was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d).

# I

## BACKGROUND

Two sisters accused Mr. Bell, a friend of their mother, of sexually assaulting them. The younger sister said that Mr. Bell assaulted her when she was fourteen years old, at her sister's birthday party. The older sister later said that around the date of the party, Mr. Bell groped her (the older sister's) breasts. Months after that report, the older sister added that, sometime before the groping, Mr. Bell had nonconsensual intercourse with her.

At trial, both sisters testified in detail about the assaults. Given the time between the alleged assaults and initial reports, the State did not have physical evidence implicating Mr. Bell. Because Mr. Bell did not testify, the trial focused on the sisters' testimony.

Mr. Bell's trial counsel sought to undermine the sisters' credibility. He suggested that the girls had motives to lie about the assaults. Counsel also highlighted the younger sister's admissions that she had been drunk at the party and, at her mother's urging, initially had lied to police about her inebriation. Counsel further emphasized that the older sister's account had changed over time. Counsel noted that, when police investigating the younger sister's allegations asked the older sister if she too had been assaulted, she initially said nothing. Then, when she reported that Mr. Bell had touched her breasts, she told police there had been no other assaults. Approximately five months later, however, she reported the sexual intercourse. She explained that she did not immediately report the assaults because she was ashamed and wanted to forget about them. The older sister also testified that her mother had asked her to lie at one of Mr. Bell's pretrial hearings about the younger sister's drinking.

To aid jurors in their evaluation of this evidence, the judge gave thorough and proper instructions: Mr. Bell was not required to prove anything; the State had the burden to prove guilt beyond a reasonable doubt; the jury must decide the case based only on the evidence; the attorneys' arguments were not evidence; and the jury should disregard any arguments suggesting facts not in evidence.

In closing arguments, however, the prosecutor made two categories of remarks that, in Mr. Bell's view, undermined those instructions and shifted the burden of proof from the State to Mr. Bell. First, the prosecutor stated that jurors who voted to acquit would "have to believe" or "must believe"

that the sisters were lying about the assaults.[1] Mr. Bell's lawyer objected that this argument amounted to "reversing" the burden of proof.[2] The trial court overruled the objection.

Next, the prosecutor argued that if someone lies, "they're going to have a reason" to do so, and that there was no evidence that the sisters had reason to lie about the assaults, even if they had lied about the alcohol.[3] Mr. Bell's lawyer countered that the sisters could well be lying, pointing to the evolution of their stories and to their mother's request that they commit perjury. In rebuttal, the prosecutor dismissed those contentions as "pure speculation."[4] The prosecutor told the jury that it could not base its decision "on mere guesswork or speculation."[5]

The jury convicted Mr. Bell. Because of his prior unrelated sexual-assault convictions, the court sentenced him to life in prison without parole.

Mr. Bell then filed a post-conviction motion to vacate the judgments of conviction and requested a new trial. In relevant part, his motion claimed that he did not receive a fair trial because the prosecutor's comments during closing argument shifted the burden of proof. The circuit court denied Mr. Bell's motion. The Wisconsin Court of Appeals affirmed. *State v.*

---

[1] R.12-9 at 19–24.

[2] *Id.* at 20–21.

[3] *Id.* at 30–31.

[4] *Id.* at 62–63.

[5] *Id.*

*Bell*, 895 N.W.2d 104 (Wis. Ct. App. 2016) (unpublished table decision).

The Supreme Court of Wisconsin in a divided opinion also affirmed. *State v. Bell*, 909 N.W.2d 750, 753, 767–68 (Wis. 2018). That court focused on whether the prosecutor's closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 757 (quoting *State v. Mayo*, 734 N.W.2d 115, 126 (Wis. 2007)) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). After considering the prosecutor's comments "in the context of the entirety of the trial," the court concluded that the prosecutor's closing argument was not improper. *Id.* at 757–68. The sisters' testimony, the court explained, established all elements of the charged crimes, so the only path to acquittal was to "convince the jury that the victims lied." *Id.* at 765.[6] In the Supreme Court of Wisconsin's view, the prosecutor did no more than highlight the credibility issue on which the case turned. *Id.* at 766.

Next, the court upheld the prosecutor's statement that people normally lie for a reason as an unobjectionable observation about ordinary life experience. *Id.* at 767. Commenting that there was no evidence of a reason for the sisters to lie about the assaults did not amount to an insistence that Mr. Bell had an evidentiary burden to carry; it was simply a characterization of the lack of affirmative reasons to disbelieve the sisters' eyewitness testimony. *Id.* at 768. The court reasoned that the prosecutor's argument amounted to

---

[6] The court distinguished our decisions in *United States v. Vargas*, 583 F.2d 380, 387 (7th Cir. 1978), and *United States v. Cornett*, 232 F.3d 570, 574 (7th Cir. 2000), on the ground that, in both cases, jurors could both believe the witnesses and still have acquitted.

persuasion rather than a statement of law. *Id.* at 767. The court also upheld the prosecutor's admonition that the jurors must not speculate with respect to a witness's credibility. The court explained that, "[a]s in all other aspects of the case, the jury must consider the witnesses' testimony in light of the admissible evidence and reasonable inferences, all as directed by their 'common sense and experience.'" *Id.* at 768.

In a concurring opinion, Justice Ziegler clarified why the prosecutor's "must believe" statements did not amount to error. *Id.* at 773 (Ziegler, J., concurring). She explained that the prosecutor's arguments were not evidence and that the witnesses' testimony—the sole evidence in the case—was sufficient to prove guilt. *See id.* The prosecutor's statements simply described the duty of the jury to assess the witnesses' credibility. *Id.* at 774.

Justice Bradley dissented, opining that the prosecutor's "motive" statements suggested that Mr. Bell must present evidence of the victims' motive to lie in order for the jury to acquit him. *Id.* at 775–77 (Bradley, J., dissenting). Thus, the prosecutor's statements constituted an improper argument that shifted the burden of proof from the State to Mr. Bell and abrogated the presumption of innocence to which Mr. Bell was entitled. *Id.* at 777 (citing *United States v. Smith*, 500 F.2d 293, 294–95 (6th Cir. 1974)).

Mr. Bell then filed a pro se petition for a writ of habeas corpus, which the district court denied. Applying the deferential AEDPA standard, 28 U.S.C. § 2254(d), the court ruled that the Supreme Court of Wisconsin's decision was not contrary to or an unreasonable application of clearly established federal law. The court denied Mr. Bell a certificate of

appealability. We, however, granted him a certificate and appointed counsel.

## II

## DISCUSSION

Although we review the district court's denial of the petition de novo, our review is constrained by AEDPA's deferential treatment of state-court decisions. *Evans v. Jones*, 996 F.3d 766, 774 (7th Cir. 2021). To obtain relief, Mr. Bell must establish that the Supreme Court of Wisconsin's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to … clearly established Federal law" "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 693–94 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A decision involves an "unreasonable application of[] clearly established Federal law" if it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* Only Supreme Court precedent—not circuit precedent—establishes the constitutional law against which we measure the state decision. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam).

To evaluate a claim of unconstitutional closing argument by a prosecutor, we turn to the clearly established federal law articulated in *Darden v. Wainwright*, 477 U.S. 168 (1986). *See Parker*, 567 U.S. at 45. *Darden* requires that the comments

under scrutiny not only must be "improper," but also must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 180–81 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The *Darden* standard is therefore "highly generalized," and under AEDPA state courts enjoy significant leeway in applying it. *Parker*, 567 U.S. at 48–49. The Court has not drawn a precise line between "proper" and "improper" argument.

Mr. Bell contends that the prosecutor's comments were improper because they wrongly implied that (1) in order for the jury to acquit, Mr. Bell needed (but failed) to offer evidence that the sisters were lying and (2) the jury could convict even if it harbored a reasonable doubt about the truthfulness of the sisters' testimony.

Mindful of the latitude afforded state courts in deciding *Darden* claims, we cannot conclude that the state court acted unreasonably in holding that the comments were not improper. Given the course of the trial and the parties' strategies, the Supreme Court of Wisconsin reasonably characterized the case as presenting only one real question to the jury: Were the sisters telling the truth? The State's case relied on the sisters' testimony, and the defense's case relied on poking holes in it.

Under those circumstances, the Supreme Court of Wisconsin reasonably concluded that the prosecutor did no more than tell the jury that its decision about the sisters' credibility would, for practical purposes, decide the case. It was reasonable to characterize the comments as properly inviting the

jury to believe the sisters absent evidence that they were ly-ing.[7]

## CONCLUSION

Accordingly, the judgment of the district court is affirmed.

AFFIRMED

---

[7] *Cf. Cupp v. Naughten*, 414 U.S. 141, 142, 148–50 (1973) (upholding jury instructions creating rebuttable presumption that witnesses testify truth-fully).